170-07/DPM/PLS
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
Mountiko Marine Co. Ltd.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Don P. Murnane, Jr. (DM 3639)
Pamela L. Schultz (PS 0335)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MOUNTIKO MARINE CO. LTD.,

          Plaintiff,

07 CIV 3334

**VERIFIED COMPLAINT**

-against-

PEAK STAR TRADING CO. LLC, PAWAN JAIN
& SONS and SOCIETE PRAGATI S.A.R.L., a/k/a
PRAGATI INTERNATIONAL,

          Defendants.
------------------------------------------------------------x

      Plaintiff MOUNTIKO MARINE CO. LTD. (hereinafter, "MMC"), through its attorneys Freehill Hogan & Mahar, LLP, as and for its Verified Complaint against Defendants PEAK STAR TRADING CO. LLC (hereinafter, "PEAK STAR"), PAWAN JAIN & SONS (hereinafter "PAWAN JAIN") and SOCIETE PRAGATI S.A.R.L. a/k/a PRAGATI INTERNATIONAL (hereinafter, "PRAGATI") (hereinafter collectively, "Defendants"), alleges upon information and belief as follows:

    1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of obligations arising under an ocean bill(s) of lading and a maritime contract of charter party incorporated therein. The case also falls within the Court's admiralty and maritime

jurisdiction pursuant to 28 U.S.C. §1333. Finally, the Court has jurisdiction pursuant to 9 U.S.C. §203, which provides that any action or proceeding falling under the Convention for the Recognition and Enforcement of Foreign Arbitral Awards shall be deemed to arise under the laws and treaties of the United States.

2. At all times relevant hereto, Plaintiff MMC was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 3rd Floor, Kolokasides Building, 1 Costakis Pantelides Ave., Nicosia 1010, Cyprus.

3. At all times relevant hereto, Defendant PEAK STAR was and still is a business entity organized and existing under the laws of a foreign country with an address at 210 Golden Fork Building, OPP, Day to Day Discount Centre, Nasir Square, Deire, Dubai, United Arab Emirates.

4. At all times relevant hereto, Defendant PAWAN JAIN was and still is a business entity organized under the laws of a foreign country with an address at D-38, SMA, Industrial Area, G.T.K. Road, Delhi, 110 033, India.

5. At all times relevant hereto, Defendant PRAGATI was and still is a business entity organized under the laws of a foreign country with an address at C/1438, Vedoko, 01 BP 5465, Cotonou, Benin. Defendant PRAGATI utilizes other entities as paying or funding agents for the purposes of receiving, holding and/or transferring funds, including but not limited to Space Star Gen. Trading L.L.C. a/k/a Space Star General Trading L.L.C.

6. On or about March 1, 2006, Plaintiff MMC as owners of the M/V PELAGOS entered into a maritime contract of charter party with charterer Forbes Gokak Limited (hereinafter, "FORBES"). The charter party between MMC and FORBES is hereinafter referred to as the "MMC-FORBES charter party."

7. Thereafter, on or about June 16, 2006, FORBES, as disponent owner of the PELAGOS entered into a charter party with defendant PAWAN JAIN as Charterer. The charter party between FORBES and PAWAN JAIN is hereafter referred to as the "FORBES-PAWAN JAIN Charter Party".

8. On or about August 6, 2006, the vessel loaded Indian rice for carriage and discharge at West African Ports, including the port of Cotonou (Benin).

9. Bills of lading were issued for the carriage of the cargo, identifying Defendant PAWAN JAIN as the shipper acting on behalf of Defendant PEAK STAR, Defendant PRAGATI as the consignee and Defendant PEAK STAR as the notify party.

10. The bills of lading incorporated all of the terms and conditions of either the MMC-FORBES charter party or the FORBES—PAWAN JAIN charter party, both of which contained a clause requiring arbitration of any dispute and the application of English law and/or the Hague/Hague-Visby Rules.

11. The cargo of Indian rice loaded onboard the PELAGOS contained insects and and under the applicable laws constituted a legally and physically dangerous cargo, which caused *inter alia*, (i) condemnation of the entire cargo by the authorities at the original port of discharge named in the bills of lading and (ii) detention of the vessel for more than four months.

12. Under the applicable contracts of carriage and governing English law, including Article IV(6) of the Hague/Hague-Visby Rules, there are express and implied obligations not to load and/or ship dangerous cargo on a vessel.

13. In breach of the aforesaid obligations under English law Defendants shipped a dangerous cargo on board the vessel.

14. By virtue of the foregoing, and pursuant to English law, including Article IV(6) of the Hague/Hague-Visby Rules, Defendants are thus liable for all damages directly or indirectly arising out of or as a result of the shipment of dangerous cargo.

15. Further, the obligation imposed under the relevant English law and Hague/Hague-Visby Rules, is absolute, and actual or constructive knowledge of Defendants as to the nature and character of the goods is irrelevant to the liability of Defendants.

16. The condemnation of the cargo and detention of the vessel for a period of more than four months was caused by the shipment of a physically and legally dangerous cargo on board the vessel which constitutes a breach of the terms and conditions of the contracts of carriage, as well as a breach of the obligations, duties and absolute warranties imposed on Defendants under applicable English law, including but not limited to the Hague/Hague-Visby Rules.

17. As a consequence of the condemnation of the cargo and detention of the vessel, the vessel was not re-delivered to MMC on or about October 10, 2006 as required by the MMC-FORBES charter party, which called for charter hire at a rate of $7,250 per day.

18. After MMC and FORBES entered into the head charter party, the market rate for the chartering of vessels like the M/V PELAGOS increased substantially.

19. Since the vessel could not be re-delivered by FORBES on October 10, 2006, MMC made claims against FORBES for the difference between the MMC-FORBES charter party rate of $7,250 and $13,500 (the rate at which the PELAGOS was fixed by MMC in September 2006 for another charter) for a total lost profit of $6,250 per day. Forbes denied the market rate was $13,500.

20. Thereafter, for commercial reasons, including to facilitate the provision of security to MMC for its claims against FORBES, reduce costs as to the disputes between the parties and obtain payment without arbitration of the hire due to Owners up to 8th November, MMC and FORBES entered into a Settlement Agreement, the terms of which were applicable as between MMC and FORBES only, and not binding as to any other parties.

21. The Settlement Agreement provided, *inter alia*, (i) the applicable re-delivery date as provided in the MMC-FORBES charter party was October 11, 2006; and (ii) FORBES would pay charter hire through November 8, 2006 at a rate agreed between the parties of $11,000; and (iii) FORBES agreed to post security for charter hire from November 8, 2006 utilizing a rate of $11,000 per day.

22. Although the terms of the Settlement Agreement between MMC and FORBES provided for a stipulated nominal rate of $11,000 per day, the market rate for the PELAGOS had increased substantially in the subsequent months as set forth below.

23. Accordingly, as a result of the Defendants' breaches of the contracts of carriage, Defendants are liable to Owners for, *inter alia*, the loss sustained by MMC while the vessel remained under charter to Forbes, calculated as follows:

| | |
|---|---|
| (i) the difference between the rate of $13,500 from November 8, 2006 through December 2006 and the stipulated rate of $11,000 ($2,500 per day for 53.25 days) | $133,148.00 |
| (ii) the difference between the January 2007 average monthly market rate of $15,000 and the stipulated rate of $11,000 ($4,000 per day for 31 days) | $124,000.00 |
| (iii) the difference between the February 2007 average monthly market rate of $15,500 and the stipulated rate of $11,000 ($4,500 | $126,000.00 |

| | |
|---|---|
| per day for 28 days) | |
| (iv) the difference between the March 2007 average monthly market rate of $16,000 and the stipulated rate of $11,000 through March 14, 2007[1] ($5,000 per day for 13.9964 days) | $69,982.00 |
| Total | $453,130.00 |

24. Defendants have failed and/or refused to pay the damages resulting from the shipment of dangerous cargo or otherwise secure Plaintiff's claim.

25. As noted above, and pursuant to the bills of lading and incorporated charter party, all disputes arising thereunder are to be submitted to London arbitration with English law to apply. Plaintiff MMC has commenced arbitration against Defendants PAWAN JAIN, PEAK STAR and PRAGATI.

26. Plaintiff specifically reserves its right to arbitrate the substantive matters at issue herein, and to seek an increase in the amount of security should the requested amount be insufficient to fully secure Plaintiff's claim. Plaintiff also expressly reserves and does not waive its rights to arbitrate any other disputes which arise under the bills of lading and/or charter party.

27. English law allows for the recovery of arbitrators' fees and attorney fees and disbursements as part of the normal "cost" of proceedings. MMC estimates that arbitrators' fees, attorney fees and disbursements will be, as nearly as presently may be calculated, $250,000, and that interest due will be a further $73,580.02.

28. The total amount of Plaintiff MMC's claim for damages from the refusal or failure of Defendants to pay the damages for which it is responsible, is thus calculated at $776,710.02.

---

[1] March 14, 2007 is the date the vessel was re-delivered to MMC.

29. Upon information and belief, and after investigation, Defendants cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendants have, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, credits, debts, wire transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendants ("ASSETS"), including but not limited to ASSETS in either of their names or for their benefit, and/or as to Defendant PRAGATI as may be transferred for its benefit in either of its names or in the name of its paying or funding agent Space Star Gen. Trading L.L.C. a/k/a Space Star General Trading L.L.C., at, being transferred through, or being transferred and/or wired to or from ABN Amro, American Express Bank, Atlantic Bank, BNP Paribas, Bank of America, Bank of India, Citibank NA, Deutsche Bank Trust Co., HSBC, HSBC USA Bank NA, JPMorgan Chase Bank, Standard Chartered Bank, The Bank of New York, Wachovia and/or other institutions or such other garnishees who may be served with a copy of the process of Attachment issued herein.

30. The total amount of Plaintiff MMC's claim sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims against Defendants is **$776,710.02.**

WHEREFORE, Plaintiff MMC prays:

a. That process in due form of law according to the practice of this Court may issue against Defendants, citing them to appear and answer the foregoing, failing which a default will be taken against them for the principal amount of the claim plus interest;

b. That if Defendants cannot be found within this District pursuant to Supplemental Rule B that all assets of Defendants, up to **$776,710.02**, to provide full security (as nearly as presently may be calculated) for Plaintiff MMC's claim be restrained and attached, including, but not limited to any cash, funds, credits, debts, wire transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendants, and/or including any assets of, belonging to, due or for the benefit of Defendant PRAGATI in either of its names or in the name of its paying or funding agent Space Star Gen. Trading L.L.C. a/k/a Space Star General Trading L.L.C., by ABN Amro, American Express Bank, Atlantic Bank, BNP Paribas, Bank of America, Bank of India, Citibank NA, Deutsche Bank Trust Co., HSBC, HSBC USA Bank NA, JPMorgan Chase Bank, Standard Chartered Bank, The Bank of New York, Wachovia and/or any other garnishee(s) upon whom a copy of the Process of Maritime Attachment and Garnishment issued herein may be served;

  c.  That the Court enter an order directing Defendants to appear and respond in arbitration pursuant to the terms of the charter party; and

  d.  That the Plaintiff have such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
   April 25, 2007

             FREEHILL HOGAN & MAHAR, LLP
             Attorneys for Plaintiff
             MOUNTIKO MARINE CO. LTD.

      By: _____
             Don P. Murnane, Jr. (DM 3639)
             Pamela L. Schultz (PS 0335)
             80 Pine Street
             New York, NY 10005
             (212) 425-1900
             (212) 425-1901 fax

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

Pamela L. Schultz, being duly sworn, deposes and says:

1. I am associated with the law firm of Freehill Hogan & Mahar, LLP, attorneys for the Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications and documents provided by our client and their English solicitors regarding the claim.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Pamela L. Schultz

Sworn to before me this
25 day of April, 2007

_____
Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/08

NYDOCS1/282028.1                          10